UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAZEN HASAN AGHA, on behalf of Plaintiff and a class, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 23-cv-01935 |
| v. | ) ) | Judge Sharon Johnson Coleman |
| SOFI LENDING CORP.; SOFI LENDING TECHNOLOGIES, INC.; and JOHN DOES 1-10; | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants SoFi Lending Corp. and SoFi Lending Technologies, Inc. (together, "SoFi"), move to compel Plaintiff Mazen Hasan Agha to arbitrate his claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1. For the following reasons, the Court grants SoFi's motion [17] and dismisses Agha's claims.

**BACKGROUND**

1. **Agha's Initial Registration**

SoFi sells consumer financial products and services, including various types of loans. (Dkt. 18-1.) On July 17, 2017, Agha applied for a loan from SoFi by registering on SoFi's website. (*Id.*) Agha submitted his name, address, birthdate, and phone number. (*Id.*) Before he could continue with his application, Agha was presented with a screen that included the following language: "I have read, understood and consent to the language and authorizations outlined in SoFi's Electronic Communication Policy, Social Policy, GLBA Privacy Notice, Terms of Use, Arbitration Agreement and The Military Lending Act. We [SoFi] recommend that you retain a copy for your reference." (*See id.*, Ex. A.) The Arbitration Agreement (the "Agreement"), like all other referenced policies and

1

terms, was hyperlinked in blue font to its full text. (*Id.*) To acknowledge the various terms, Agha checked a text box labeled "I Agree" and clicked "Continue." (*Id.*) Agha applied for a SoFi loan later that day. (*Id.*) During the application process, Agha agreed to the SoFi Consumer Communication Policy, discussed in more detail below. (*Id.*)

### 2. The Agreement and Disclosures

The Agreement provides as follows:

**DISPUTE RESOLUTION AGREEMENT-Please read carefully**

> Except as expressly provided below, I agree that by clicking the "I Agree" box on Social Finance Corp's or any of its affiliates (together "SoFi") website, any claim, dispute or controversy arising out of or related to (i) my registration on SoFi's website, (ii) my submission of information to SoFi in connection with any non-mortgage loan offered by SoFi, (iii) my application for any non-mortgage loan offered by SoFi, (iv) my participation in SoFi's career services or entrepreneur program, or (v) the disclosures provided to me by SoFi in connection with any non-mortgage loan product that SoFi offers (collectively, "Claim") shall be, at my or your election, submitted to and resolved on an individual basis by binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") before the American Arbitration Association ("AAA") under its Consumer Arbitration Rules ("AAA Rules") . . . .

(*Id.*, Ex. B.) The Agreement gives "claim" the "broadest possible meaning" and "includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including claims for injunctive or declaratory relief)." (*Id.*) "Claim" does not, however, cover consumer actions in small claims court. (*Id.*)

The Agreement further provides that "any dispute concerning the validity or enforceability of this Dispute Resolution Agreement must be decided by a court, not an arbitrator." (*Id.*) The Agreement states that it "shall be governed by the FAA, and not any state law concerning arbitration." (*Id.*) It also gives the consumer a "right to reject" the "Dispute Resolution Agreement by mailing a signed rejection notice" to SoFi "within sixty (60) days after registering on SoFi's website." (*Id.*) Agha did not reject the Agreement under these terms. (*See* Dkt. 18-1.)

2

Finally, the Agreement includes a jury trial waiver and class action waiver. (*Id.*, Ex. B.) The class action waiver provides, "IF EITHER YOU OR I ELECT TO ARBITRATE A CLAIM, NEITHER YOU NOR I WILL HAVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER." (*Id.*) The jury trial waiver includes similar all-caps language: "IF EITHER YOU OR I CHOOSE ARBITRATION, . . . I WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION." (*Id.*)

One of the disclosures provided to Agha during the loan application process is the "SoFi Consumer Communication Policy," which states, in pertinent part: "When consenting to telephone contact and messaging notifications, you authorize SoFi … to use SMS notifications [text message communications] … for all purposes, not prohibited by applicable law. This includes authorizing SoFi … to contact you regarding the advertising or telemarketing of our products and services." (*Id.*, Ex. E.) The same disclosure provides instructions on how to "revoke your consent" by "changing your TCPA Consent preference" on SoFi's website. (*Id.*)

### 3. Agha's Claims

Agha registered his cell phone number with the "National Do Not Call Registry" sometime prior to July 1, 2021. (Dkt. 1 ¶ 11.) Agha alleges that, despite his Do Not Call registration, SoFi sent him at least two text messages for the purpose of selling him financial services—one on October 18, 2022, and another on March 27, 2023. (*Id.* ¶ 16.) Agha alleges that he did not consent to or invite such text messages from SoFi, and that he did not engage in any transactions with SoFi in the previous eighteen months. (*Id.* ¶¶ 20, 21.) Agha claims SoFi's text messages caused him "actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of

3

unsolicited and harassing text message calls, consumption of electricity in cost per-kilowatt required to charge the cell phone, consumption of money or purchased blocks of the text message calls, and wear and tear on the telephone equipment." (*Id.* ¶ 24.) Agha, on behalf of a proposed class, alleges that SoFi's actions violated the TCPA and ICFA. (*Id.* at 5–9.)

**DISCUSSION**

There is no dispute that the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, applies in this case. The FAA makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to remedy "widespread judicial hostility to arbitration." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Although the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution,'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (2011), courts may not "invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, 142 S. Ct. 1708, 1713, 212 L. Ed. 2d 753 (2022). Rather, "[c]ourts cannot disfavor arbitration." *Johnson v. Mitek Sys., Inc.*, 55 F.4th 1122, 1124 (7th Cir. 2022).

Agreements to arbitrate are contracts, "enforceable to the same extent as other contracts, so courts must enforce [them] . . . in accordance with their terms." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 692 (7th Cir. 2004) (internal quotation marks and citation omitted). The Court therefore must compel arbitration if (1) there is a valid agreement to arbitrate, (2) the dispute falls within the scope of that agreement, and (3) the non-movant has refused to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

Agha does not dispute that he formed a valid contract[1] under Illinois law when he registered with SoFi in 2017. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (explaining that, to

---

[1] Although Agha vaguely asserts that the arbitration agreement is "unfair or deceptive" under ICFA, or a "dark pattern" under FTC regulations, he does not argue that the agreement is unconscionable or otherwise invalid under Illinois law. Nor does he explain how ICFA or FTC regulations invalidate the Agreement so

4

determine whether parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts"). But he has refused to arbitrate. The only remaining issue, then, is whether Agha's dispute falls within the scope of the 2017 Agreement.

### 1. The Agreement's Scope and Agha's Claims

Once a movant has established the validity of an arbitration agreement under state law, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998)). Under this principle, "a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

By spending most of his brief litigating "consent" under out-of-circuit TCPA case law, Agha confuses and overcomplicates this analysis. The issue before this Court is simple: Do Agha's TCPA and ICFA claims, based on SoFi's 2022 and 2023 marketing text messages, fall within the scope of the his agreement to arbitrate "any claim, dispute or controversy arising out of or related to … (ii) [his] submission of information to SoFi in connection with any non-mortgage loan offered by SoFi [or] … (v) the disclosures provided to [him] by SoFi in connection with any non-mortgage loan offered by SoFi?" The Court finds that they do.

---

that Agha is not bound by its terms. To the extent Agha intended to challenge the validity of the contract, he has failed to develop such an argument. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("where a party fails to develop arguments related to a discrete issue" that party waives the arguments). To the extent Agha intended to challenge SoFi's practices on their merits, such an argument is not appropriate at this juncture, as explained in Section 1 of this Discussion.

Agha alleges that SoFi violated the TCPA by sending him text messages even though he is on the National Do Not Call Registry, and that SoFi violated ICFA because it sent text messages "contrary to the TCPA." (Dkt. 1 ¶ 44.) In other words, Agha alleges that SoFi obtained and used his personal contact information without sending the proper disclosures and securing the proper consent. *See, e.g.*, 47 U.S.C.A. § 227(b) (prohibiting certain telemarketing done without express consent); 47 C.F.R. § 64.1200(c)(2) (same). This dispute undoubtedly "arises out of or is related to" Agha's submission of his phone number to, and his receipt of and response to disclosures from, SoFi. Indeed, one of SoFi's disclosures referenced in the Agreement is explicitly related to the TCPA, noting that consumers "may revoke [their] consent to phone calls" by "changing [their] TCPA Consent preference" on SoFi's website. (Dkt. 18-1, Ex. E.)

Agha's arguments about the deficiencies in SoFi's consent process, or its inapplicability to 2022 and 2023 text messages, may or may not be correct. But the merit of Agha's claims is irrelevant to the determination of whether he must arbitrate them. *See AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–50 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. . . . The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."). The closest that Agha comes to an argument on the scope of the agreement is in two paragraphs under "Section IV" of his response, *see* Dkt. 33 at 11. Even there, however, Agha charges that SoFi has presented insufficient evidence "as to why the number was called in 2022-2023, or that the 2022-2023 calls had anything to do with the 2017 application." *Id.* Again, these arguments really have to do with whether SoFi complied with the TCPA when it sent text messages to Agha, not with whether the Agreement covers such TCPA claims. Strong or weak, Agha's claims fall within the scope of the Agreement.

**2. The Class Action Waiver**

SoFi first argues that the Court should enforce the Agreement's class action waiver along with its arbitration requirement. SoFi asks in the alternative that the Court enforce the class action waiver independently, were the Court not to enforce the arbitration provision. Since the Court finds that Agha must arbitrate his claims, the Court need only address SoFi's first argument.

Agha does not respond to SoFi's first argument (that is, that the class action waiver should be enforced *along with* the arbitration agreement). Instead, Agha argues only that "the class action waiver is part of the arbitration agreement and has no independent force." (Dkt. 33 at 12.) By failing to respond to SoFi's first argument, Agha has conceded it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Agha also does not argue that the class action waiver is unconscionable, nor that there are any other issues with the provision.

The Seventh Circuit has held that that "the availability of class arbitration is a question of arbitrability" to be decided by the court rather than the arbitrator. *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018). Courts are "obliged to enforce *the type of arbitration* to which the[] parties agreed." *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) (emphasis added). So, "[w]hen an agreement is unambiguous [regarding class arbitration], the court must enforce the terms of the agreement." *Sesto v. Nat'l Fin. Sys., Inc.*, No. 04 C 7768, 2005 WL 6519430, at *3 (N.D. Ill. Apr. 25, 2005) (St. Eve, J.) (citing *Livingston*, 339 F.3d at 558).

The only issue before the Court at present is whether the Agreement's class action waiver is unambiguous. The Court finds that it is. The provision states, in bold and all-caps, "Class Action Waiver: If either you or I elect to arbitrate a claim, neither you nor I will have the right to participate in a class action … either as a class representative or class member." The jury trial waiver includes similar language: "I will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration." As Agha admits, "the class

7

action waiver is an integral part of the arbitration clause." (Dkt. 33 at 12.) It unambiguously describes the rights that the parties are agreeing to forego to arbitrate disputes.

The fairness of such a provision is not at issue. On its face, the Agreement requires the parties to arbitrate individually, and the Court is bound to enforce its terms.

**CONCLUSION**

For these reasons, the Court grants SoFi's motion and dismisses Agha's claims without prejudice. *See Wallace v. Grubhub Holdings Inc.*, No. 18 C 4538, 2019 WL 1399986, at *6 (N.D. Ill. Mar. 28, 2019) (Chang, J.), *aff'd*, 970 F.3d 798 (7th Cir. 2020) (The "general approach" of staying a case in favor of arbitration "has given way in cases where the entire dispute clearly will be decided in arbitration and thus there is no reason to hold on to the case."). Agha must arbitrate his claims on an individual basis.

**IT IS SO ORDERED.**

Date: 3/19/2024

Entered:

SHARON JOHNSON COLEMAN
United States District Judge

8